UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.S. and S.S. on behalf of Z.S.,
Plaintiffs,

v.

CARMEL CENTRAL SCHOOL DISTRICT,
Defendant.

**MEMORANDUM DECISION**

7:10-cv-8021(VB)

Briccetti, J.:

This action arises from plaintiffs' attempts to secure the benefits of an education at a private school for their son Z.S., who is disabled under the law. Plaintiffs commenced this action seeking (1) a declaration that plaintiffs were a prevailing party under the law and (2) a judgment fixing an award of attorneys' fees. The Court having previously found plaintiffs to be the prevailing party under the law, plaintiffs filed a motion for the award of attorneys' fees (Doc. #21), which is now pending. For the reasons set forth below, the Court will grant plaintiffs' motion and award plaintiffs attorneys fees in the amount of $100,863.30 and costs in the amount $3,035.40.

## BACKGROUND

Although the complaint addresses several school years, the Court will recite only those allegations related to 2007-08, which is the only year at issue in this case. Plaintiffs' son Z.S. is a minor who has been diagnosed with an autism spectrum disorder. He is a student in the defendant Carmel Central School District, and he falls within the purview of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.[1]

[1] The IDEA was amended effective July 1, 2005 pursuant to the Individuals With Disabilities Education Improvement Act, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The Court refers to the current version of the law, as amended, as the IDEA.

On May 10, 2007, defendant School District convened a meeting to construct Z.S.'s individualized education plan ("IEP") for the 2007-08 school year.[2] Because the IEP team meeting was not able to fully develop Z.S.'s IEP on that day, three more meetings were convened. Following a meeting on June 15, the IEP team met again July 26. Representatives were present at that meeting from the Southern Westchester BOCES Project AIIM, located in the Hommocks Middle School ("HMS") in Mamaroneck, New York. No representatives from any other schools were present. Following their visit to HMS on August 8, 2007, plaintiffs notified defendant in writing that they had rejected the proposed IEP and Z.S.'s placement at HMS. Plaintiffs informed defendant that they intended to place Z.S. at the Connecticut Center for Childhood Development ("CCCD") and would seek tuition reimbursement for that placement.

On August 14, 2007, plaintiffs filed for an impartial hearing to secure such tuition reimbursement. One of the primary issues for the impartial hearing officer ("IHO") was the appropriateness of the HMS placement and program. The hearings regarding the school year

---

[2] Under the IDEA, the student's educators and parents meet and jointly develop an IEP for each year of the student's education. See 20 U.S.C. § 1414(d)(1)(B). The IDEA provides that the "special education" developed for a child in an IEP must be "specially designed instruction, at no cost to parents or guardians, [and] meet[ ] the unique needs of a child with a disability, including – (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29). The "related services" that may be a necessary part of an IEP include:

> transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education . . . .

Id. § 1401(26).

were held over one year and finally concluded on January 30, 2009.[3] On November 19, 2008, IHO recused himself for "personal reasons." On December 4, 2008, a new IHO was appointed to continue hearing the matter.

On May 29, 2009, the IHO issued his findings of fact and decision awarding Z.S. tuition reimbursement at CCCD for the 2007-2008 school year. The IHO found that the placement at HMS was inappropriate and would deny Z.S. a free and appropriate education, as required by the IDEA.

Defendant appealed the IHO's decision to a state review officer ("SRO") on July 7, 2009. Plaintiffs filed a motion to dismiss the appeal, which was denied by the SRO. Subsequently, they filed an answer. On August 31, 2009, the SRO issued his decision dismissing the school district's appeal as moot. Defendant did not appeal the SRO's ruling, and it became final on the merits.

Despite due demand, defendant has refused to pay any attorneys' fees or costs incurred by plaintiffs during this process. This action was commenced to secure the award of such attorneys' fees.

**DISCUSSION**

In an action brought under the IDEA, prevailing plaintiffs may be entitled to "reasonable attorney's fees . . . ." 20 U.S.C. § 1415(i)(3)(B)(i). The Court makes a two-pronged inquiry. First, it must determine whether the party seeking fees is a prevailing party. If it is, the Court must evaluate to what extent the parents are entitled to reasonable fees. The Court may reduce

---

[3] The hearing was commenced on December 19, 2007. It continued on February 11, 2008; March 3, 2008; April 17, 2008; May 2, 2008; May 15, 2008; May 22, 2008; July 18, 2008; September 22, 2008; September 23, 2008; November 14, 2008; December 16, 2008; and January 30, 2009.

the awarded fees where the parents' attorneys have "unreasonably protracted" the resolution of the controversy or where amount of the fees requested is unreasonable. 20 U.S.C. § 1415(i)(3)(F). Successful parents are entitled to reimbursement of fees incurred both in the administrative process and in litigating in federal court. A.R. v. N.Y. City Dep't of Educ., 407 F.3d 65, 75 (2d Cir. 2005).

**I. Plaintiffs' Status as Prevailing Party**

In its response to plaintiffs' motion, defendant requests the Court reconsider its previous holding that plaintiffs are a prevailing party entitled to fees under the IDEA. In its decision denying defendant's motion to dismiss this action dated February 28, 2011 (Doc. #15), the Court held that "in [its] judgment defendant is estopped from arguing that plaintiffs are not entitled to reimbursement of their attorneys' fees."[4] In so doing, the Court rejected O'Shea v. Bd. of Educ., 521 F. Supp. 2d 284 (S.D.N.Y. 2007), finding the case "wrongly decided" and "clearly distinguishable."

As the Court previously ruled, plaintiffs are the prevailing party in the underlying administrative process which would entitle them to an award of reasonable attorneys' fees. Having reviewed its previous decision, the Court sees no reason now to change its conclusion. The Court properly rejected defendant's argument that the pendency provision of the IDEA[5]

---

4 This order was issued by the Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting in this Court by designation. This case was reassigned to the undersigned on May 9, 2011.

5 Pursuant to the pendency provision (also referred to as the "stay put" provision) of 20 U.S.C. § 1415(j):

> the inquiry focuses on identifying the then current educational placement, and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district

undermined any administrative remedies plaintiffs could have secured. As the Court noted, plaintiffs were in a catch-22 – if they had withdrawn their administrative action, they would not have been entitled to reimbursement. Plaintiffs' having not done so, defendant urges the Court not to award plaintiffs attorneys' fees. If defendant believed that the administrative process was at any time for naught, it should have moved to dismiss the action or otherwise stopped defending it. Because it did not, the Court will not conclude at this late stage plaintiffs should not have pursued it.

**II. Plaintiffs' Fee Request**

In determining the amount of reasonable attorneys' fees, the Second Circuit has abandoned the lodestar approach, preferring a "presumptively reasonable fee" approach. See Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). Under the modern analysis, the district court should focus on "all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110,117 (2d Cir. 2007). In addition, the court should review the twelve factors set forth by the Fifth Circuit Court of Appeals in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989). These twelve factors require the court to examine:

---

> continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

Mackey v. Bd. of Educ., 386 F.3d 158, 163 (2d Cir. 2004).

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 187 n.3.

The Supreme Court has pointed out that the most important factor to a determination of what constitutes reasonable attorneys' fees is "the degree of success" obtained by plaintiffs. See Farner v. Hobby, 506 U.S. 103, 114 (1992). This analysis is not limited to whether plaintiffs prevailed on each individual claim. Rather, the "quantity and quality of relief obtained," compared to what plaintiffs sought to achieve as evidenced in their complaint, are key factors in determining the degree of success achieved. Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008).

Building on the Johnson factors and the required examination of plaintiffs' success, courts have previously found that the Johnson factors should be used to calculate the presumptively reasonable fee, which then should be reduced to the extent that plaintiffs' success was limited. See, e.g., Saunders v. City of New York, 2009 U.S. Dist. LEXIS 115366, at *28 (S.D.N.Y. Dec. 9, 2009); see also Kassim v. City of Schenectady, 415 F.3d 246, 255-256 (2d Cir. 2005).

Fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The fees awarded may be reduced based on a finding that the rates charged or

"time spent and legal services furnished were excessive." Id. § 1415(i)(3)(F)(iii). A reasonable hourly rate is one that a "paying client would be willing to pay." Arbor Hill, 522 F.3d at 190.

Plaintiffs seek attorneys' fees in the aggregate amount of $191,689.45. Specifically, plaintiffs seek $141,395.54 incurred in the impartial hearing before the IHO, $25,980.59 incurred before the SRO and $24,313.32 incurred in this action. Because plaintiffs present each task – the IHO hearing, the SRO hearing, and this action – separately, the Court will address each similarly.

First, it is necessary to identify the relevant billers. Attorney Gary Mayerson has been the primary attorney representing plaintiffs in the administrative hearing and this action. According to his affidavit, Mayerson graduated from Georgetown University Law Center in 1979 and formed Mayerson & Associates in 2000 to represent disabled students. Mayerson serves as the National Director of the Autism Speaks Federal Legal Appeals Project. He has testified before Congress and has appeared in national media. From August 2007 through December 2007, Mayerson's billing rate was $500 per hour. In January 2008, his rate increased to $600 per hour.

Several other attorneys at Mayerson & Associates also worked on this matter. Brianne Dotts started working at the firm in 2007 as a legal intern and billed at the rate of $295 per hour beginning in August 2009. Prior to August 2009, her hourly billing rate as a "law graduate" was $150. Dotts graduated New York Law School in 2008 and has been admitted to practice law since 2009. Maria McGinley began working at Mayer & Associates in 2009 as a legal intern and has an hourly billing rate of $270. Her application for admission to this Court is currently pending, though she is admitted to practice in the state of New York. Prior to attending law school, McGinley earned a certificate as a special education teacher. According to her resume,

Janna Wince graduated from New York Law School in 2008. There is no indication as to when she joined the firm. Wince's hourly rate was $150. Marnie Cox, according to her resume, graduated from Fordham Law School in 2009, though there is no indication as to when she joined the firm. Cox's hourly billing rate was $250. According to her resume, Jennifer Frankola graduated from City University of New York School of Law in 2007 and joined the firm in 2005. Frankola's hourly rate was $150.

Kate Goldwasser was a legal intern at Mayerson & Associates who worked on this matter. She graduated from Cardozo Law School in 2010, though she worked on this matter while she was in law school. Her hourly billing rate was $90.

Mayerson & Associates has utilized several paralegals in this matter, all of whom have billed at $125 per hour since January 2008. Previously, the paralegals billed at $110 per hour. Mauricio Bertone earned his Paralegal Certificate in 2002 and has been with the firm since 2004. Roselyn Disla earned her Paralegal Certificate in 2009 and has been with the firm since 2010. Pebbles Quevedo has worked at the firm since 2004. According to their respective resumes, Nury Alvarez and Christina Jean-Baptiste have not earned Paralegal Certificates, but have worked as paralegals at Mayerson & Associates.

**III. Reasonableness of Rates**

Defendant argues that each biller's billing rate was in excess of the customary hourly billing rate for attorneys and paralegals with comparable qualifications in the Southern District of New York in comparable cases. The burden is on plaintiffs in this matter to show "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); see also Stewart v. Barclay's Bus. Credit, Inc., 860 F. Supp. 150, 150 (S.D.N.Y.

1994) (recognizing "time honored practice" of applying New York City rates in calculating attorneys' fees throughout Southern District of New York regardless of location of courthouse).

**A. Mayerson's Billing Rate**

Mayerson represents that a fair hourly billing rate for his services was $500 before January 2008 and $600 since then. In support of these rates, plaintiffs submit the statements of three attorneys who practice education law in the Southern District of New York. These attorneys state that they charge their respective clients fees ranging from $475 per hour to $550 per hour. None of the three provide precedent showing a court finding them entitled to reimbursement at such rate, nor do they submit retention agreements evidencing that clients are willing to pay such fees.[6]

Mayerson submits no precedent that would support an award of fees at a rate of $600 per hour. Nor has he submitted any retention agreements indicating his clients are willing to pay that rate. Rather, he cites to one article indicating that attorneys are charging clients $1,000 per hour in the New York City area and another profiling a child psychiatrist in Manhattan who charges $1,000 per hour for consultation. See Nathan Koppel, Lawyers Gear Up Grand New Fees, Wall St. Journal, Aug. 22, 2007; Abby Ellin, When a Child's Anxieties Need Sorting, N.Y. Times, June 3, 2011. The Court does not find either article persuasive in light of the Court's duty to determine the prevailing hourly rate for cases similar to the instant one. The lawyers profiled in Koppel's article are corporate litigators who do not practice education law, and the

---

[6] In addition, the Court found one case where it awarded plaintiffs' counsel fees based on a billing rate of $600 per hour. That case was a class action, while this case is a single-plaintiff action. See LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510 (S.D.N.Y. 2010). Accordingly, the Court does not find the ruling particularly relevant in determining a fair hourly rate for the attorneys in this case.

psychiatrist in Ellin's article is not a lawyer.[7]

Furthermore, the Court has noted an hourly billing rate greater than $400 is warranted only in "unusually difficult and complex" civil rights cases. See Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 33883, at *5-6 (S.D.N.Y. May 4, 2007) (awarding lead counsel $450 per hour in a Fair Labor Standards Act case involving "a host of witnesses and parties, numerous boxes of documents, and depositions and investigations conducted in four languages"). Similarly, the Court awarded lead counsel an hourly rate of $425 in a case that was "considerably more difficult and complex than the average civil rights case." Wise v. Kelly, 620 F. Supp. 2d 435, 445-47 (S.D.N.Y. 2008). Wise was a putative class action challenging a New York City statute. In a recent IDEA case, the Court awarded lead counsel who had spent the majority of his eighteen year career litigating civil rights and education cases an hourly rate of $350. See E.S. v. Katonah-Lewisboro Sch. Dist., 2011 U.S. Dist. LEXIS 49117 (S.D.N.Y. Apr. 20, 2011) (noting "question presented was not particularly difficult and did not require extremely experienced counsel").

Counsel does not point out any recent decisions awarding Mayerson fees in cases before this Court. In the past, courts in the Second Circuit have awarded Mayerson fees at a rate of $350 per hour. See A.R., 407 F.3d 65; C.B. ex rel. W.B. v. N.Y. City Dep't of Educ., 2006 U.S. Dist. LEXIS 68649, at *38 (E.D.N.Y. Sept. 25, 2006); see also Deal v. Hamilton County Dep't of Educ., 2006 U.S. Dist. LEXIS 76324 (E.D. Tenn. Aug. 1, 2006) (reimbursing Mayerson in the Eastern District of Tennessee at a rate of $275 per hour, which was the prevailing rate in that district). The Court is aware that these decisions are several years old and may not reflect

[7] The Court also notes Ellin's statement that the psychiatrist's rate is "three to four times that of the average Manhattan therapist."

current billing practices.

Reviewing the administrative filings and decisions in this single-student action, it does not appear that the case was particularly complex. The questions raised and addressed in the various proceedings do not appear to have been overly difficult. Although the administrative process in this action was long and drawn out, it does not necessarily follow that it was complex and required extremely experienced counsel. Counsel will be compensated for the amount of time spent in hearings not through an increased hourly billing rate, but through a greater number of hours billed.

Examining comparable attorneys in similar cases as well as the demands of this action, an appropriate market rate for an attorney of Mayerson's skills and expertise in this action is $375 per hour.[8] The Court will award Mayerson based on this hourly rate for the entire pendency of this action, despite the increase in his hourly rate in January 2008.

**B. Frankola's, Wince's, Dotts's and Cox's Billing Rates**

For the administrative process, plaintiffs seek fees for Frankola, Wince, Dotts and Cox at an hourly rate of $150. For time spent in this federal action, plaintiffs seek fees for Dotts and Cox at hourly rates of $295 and $250, respectively. Defendant asserts that the rates for Dotts and Cox in this action are excessive.

When plaintiffs' attorneys began incurring fees for this federal action in October 2010, Dotts had been out of law school for two years while Cox had been out of law school for one year.

---

[8] Defendant's counsel states in his affirmation in opposition to plaintiffs' motion that "the current reasonable and customary rate for an experienced attorney such as Mr. Mayerson [is] less than $400/hr, i.e., no more than $375/hr." The Court agrees and accordingly sets Mayerson's award at that level.

First- and second-year associates practicing before this Court at small firms have typically been awarded fees in the $125 to $200 range. See E.S., 2011 U.S. Dist. LEXIS 49117, at *16. In light of their experiences and the demands of this case, the Court will award plaintiffs $175 per hour for Dotts's time and $150 per hour for Cox's time accrued in the federal action.

**IV. Reasonableness of Fees Requested**

In evaluating the extent to which counsel is entitled to fees, the Court should exclude hours which are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "Attorneys applying for court-ordered compensation must document the application with time records [which] should specify, for each attorney, the date, the hours expended, and the nature of the work done." Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009). The description of the work performed need not be overly specific as "[g]eneral descriptions of completed work are sufficient." E.S., 2011 U.S. Dist. LEXIS 49117, at *18. The central question is whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

**V. Time Expended For Impartial Hearing**

Plaintiffs billed time for the impartial hearing stage of this case from August 2007 until June 2009. During that time, Mayerson accrued $116,140 in fees, based on 200 hours, plus

$9,985 in travel time.[9] Paralegals Alvarez, Bertone and Jean-Baptiste billed $1,874.50.[10] Dotts, Frankola, Wince and Goldwasser billed a total of $11,917.50. Plaintiffs also incurred $1,477.96 in expenses.

As to specific time entries, defendant challenges Mayerson's charges for general preparation for hearings where the time for preparation exceeded the length of the hearing. Specifically, Mayerson billed for 29.6 hours in advance of the seven-hour hearing on December 19, 2008; 9.2 hours in advance of a six-hour hearing on February 11, 2008; 11.4 hours in advance of a 5.5-hour hearing on March 3, 2008; and 9.6 hours in advance of a six-hour hearing on September 22, 2008. In light of the lengthy and complicated process for preparing for a hearing, the Court will not reduce plaintiffs' award for Mayerson's preparation with one exception; the Court will reduce the compensable time for preparation for the December 19 hearing to a total of twenty-one hours, a reduction of 8.6 hours.

Defendant also challenges certain entries that it asserts constitute "block-billing," are vague, or do not appear to be reasonable under the circumstances. The Court has reviewed these entries and will not permit Mayerson to recover for his entry dated October 18, 2007.[11] Mayerson billed twice for a hearing on January 30, 2009. The Court will strike one entry of 3.2

---

[9] Mayerson billed 38.6 hours at $500 per hour and 161.4 hours at $600 per hour. He billed 2.5 hours of travel time at $250 per hour and 31.2 hours at $300 per hour. The Court observes that non-working travel time is customarily billed at half-rate in the Second Circuit. See Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 n.6 (S.D.N.Y. 2001). Mayerson appropriately billed his travel time at half-rate.

[10] Bertone accrued 3.6 hours at $110 per hour and 3.4 hours at $125 per hour.

[11] Mayerson billed 2.70 hours that day for "Burden memo of law to IHO," which, according to Mayerson's affidavit, was a letter to the IHO relating to the parties' respective burdens of proof during the hearing. Because the IHO rejected plaintiffs' argument in light of established Supreme Court precedent, the Court finds this time to be non-compensable.

hours and reduce the other entry to two hours based on defendant's representation that the hearing lasted only two hours. Similarly, the Court will deduct 5.6 hours from Mayerson's demand because of duplicate entries on March 14, 2009.[12]

To summarize the Court's treatment of the fees requested as to the impartial hearing stage, the Court will reduce Mayerson's requested billing rate to $375 per hour for all time billed at this stage. Plaintiffs request fees for Mayerson for a total of 200 hours. The Court will reduce this total by 21.3 hours for a total of 178.7 hours. At the hourly rate of $375, the Court will award Mayerson $67,012.50 for his non-travel fees and $6,318.75 for his travel time during this period.

To this total, the Court will add the requested amounts (1) for paralegals Alvarez, Bertone, and Jean-Baptiste at the respective requested rates, and (2) for "law graduates" Dotts, Frankola, and Wince at the requested hourly rate of $150. For legal intern Goldwasser, the Court will reduce her total hours requested by 9 hours, but award her fees at the requested hourly rate of $90. The reduction for Goldwasser is warranted because she billed six hours for "transcribing transcripts" and three hours for work on a post-hearing brief months before the hearings ended. As to the transcripts, plaintiffs fail to adequately explain why a legal intern transcribed transcripts. They similarly fail to explain why Goldwasser began working on the post-hearing brief more than three months before the end of the hearing. Finally, the Court will award plaintiffs their full expenses of $1,477.96. In total, the Court will award plaintiffs $86,313.25 in fees and $1,477.96 in expenses incurred during the impartial hearing stage.

---

[12] Mayerson billed 5.60 hours and 3.70 hours in two separate entries dated March 14, both for "Post Hearing Brief." The Court will strike the greater entry and permit the lesser entry.

## VI. Time Expended for Office of State Review Hearing

Mayerson billed 34.7 hours, Dotts billed 16 hours and Bertone billed 0.9 hours for the Office of State Review process.[13] The billing statement provided with Mayerson's affidavit only accounts for 11.3 hours of Mayerson's time, 5.5 hours of Dotts's time, and 0.6 hours of Bertone's time.[14] Therefore, the Court will start the evaluation of appropriate fees with the statement supplied to the Court.

As noted previously, the SRO denied plaintiffs' motion to dismiss the appeal as not proper at the appellate stage. In light of the SRO's disposition of the motion, the Court will not grant any fees incurred in drafting it. In addition, because of the lack of explanation as to the entry, the Court will not award fees for Bertone's work on July 21, 2009 described as "Email to parents regarding the Szvitek SRO."

The Court accordingly awards plaintiffs fees in the amount of $62.50 and expenses in the amount of $978.09 for the State Review Hearing.

## VII. Federal Action

For this federal action, plaintiffs seek an award of fees for Mayerson for 20.9 hours, for Dotts for 27.8 hours, and for Cox for 11.9 hours. The Court finds the requested fees for the federal action reasonable and will award plaintiffs for all the work requested, albeit at the lower

---

[13] At the Court's request, plaintiffs submitted an Excel spreadsheet summarizing their fee requests, including aggregate fees by each biller for each of the three portions of this matter. This spreadsheet was also provided to defendant but was not filed with the Court. As it is merely as aggregation of the requested fees and not a substantive clarification of any request, it provides no new information that would warrant it being filed.

[14] The statement filed with the Court and included as an exhibit to the motion addresses fees incurred from July 10, 2009 through July 21, 2009 and is limited to one page, numbered as page one. The expenses covered in this time stretch across two pages which are numbered as pages one and two.

hourly rates indicated above. Plaintiffs are awarded $14,487.50 in fees and $579.35 in expenses incurred during the federal action.

In conclusion, the Court awards plaintiffs a total of $100,863.30 in fees and $3,035.40 in expenses incurred in this action as well as the underlying state administrative actions.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motion for attorneys' fees and costs (Doc. #21) in part for attorneys' fees in the amount of $100,863.30 in fees and $3,035.40 in costs.

The Clerk is instructed to terminate this motion.

Dated: White Plains, New York
July 26, 2011

SO ORDERED:

Vincent L. Briccetti
United States District Judge